THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES L. FERGUSON, Defendant-Appellant.

Third District   No. 79-218

Opinion filed May 21, 1980.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After pleading guilty to one count of attempt murder, the defendant, James L. Ferguson, was sentenced to a term of imprisonment of not less than four nor more than 30 years. Subsequently, however, the defendant filed a petition for post-conviction relief alleging that the sentence imposed was based on the trial judge's mistaken belief of four years being the statutorily required minimum sentence for attempt murder. As a result of this petition, the defendant's sentence was vacated and a second sentencing hearing was conducted. Following this second hearing, the defendant was sentenced to a term of imprisonment of not less than 10 nor more than 30 years. From this determination the defendant appeals.

The factual basis for the guilty plea established that on the night of December 7, 1976, the defendant entered the home of his estranged wife and their children. No one else was in the house at that time. However, when Mrs. Ferguson returned home, she confronted the defendant, who then shot her in the abdomen. While she was lying on the bed, the defendant attempted to place his revolver in her hand. Then, ostensibly to drive his wife to a hospital, the defendant placed her in her car. Instead, the defendant drove her out into the country where the automobile stalled. While the defendant was looking under the hood, Mrs. Ferguson locked all the car doors, started the vehicle and began to back up. At this point, the defendant shot her in the eye.

At the original sentencing hearing, the trial judge announced the reasons for the sentence imposed. Although noting the serious nature of the crime, a number of mitigating factors were found to weigh in favor of giving the defendant an opportunity for an early release. These factors included the absence of a prior criminal record, the progress of the

defendant toward rehabilitation of his drinking problem, the long history of family problems, and the defendant's professed remorse.

Prior to the second sentencing hearing, both the trial court and the defense counsel advised the defendant that if post-conviction relief was granted, the State would introduce evidence of his conduct subsequent to the imposition of the original sentence to support a request for an increased sentence. Pursuant to the defendant's motion, a continuance was granted to enable the defendant to consider his options. Yet, after consideration of the available options and potential consequences, the defendant persisted in his request to have his sentence vacated.

At the second sentencing hearing, a fellow inmate of the defendant, Kenneth Powers, testified that the defendant and he had conversations about killing the defendant's ex-wife. In addition, the defendant wrote a letter concerning this subject and asked Powers to mail it to the defendant's brother, whose address was provided by the defendant. Instead of mailing the letter, however, Powers delivered it to a counselor.

It was stipulated that the defendant wrote both the letter and note containing his brother's address. The letter provides a description of Elizabeth Ferguson, the defendant's ex-wife, and directions to her residence. It also explains that the best time to carry out the instructions is 9 a.m. when the children are in school so they would not be harmed. The letter instructs the reader to have Mrs. Ferguson write two notes, one to the children explaining that she lied about their father and a second to the trial judge explaining that she lied at the trial and that she actually shot herself. In addition, the letter directs that the defendant's ex-wife be shot in the head and a "32 hand gun" be put in her right hand. For this, the defendant promised to pay $1000 on the day he was released from prison.

In an attempt to explain the letter, the defendant took the witness stand. The reason for the letter, according to the defendant's testimony, was to get his ex-wife back in court. This action was based on his concern for the welfare of his children, a desire for them to know the truth, and a concern for the preservation of the family house which belonged to his mother.

Apparently to convince the court of his veracity, the defendant requested that a polygraph examination be administered. Subsequently, the defense counsel made a motion to the same effect. After indicating that the plain language of the letter was inconsistent with the defendant's explanation, the trial court ordered the polygraph examination. It was agreed by both parties that the results of the examination would be admissible, but the sentencing judge explained that the court was not delegating its fact-finding function to the polygraph examiner.

Following the examination, the examiner testified at the reconvened

resentencing hearing. It was the examiner's impression that the defendant was being untruthful in his explanation of the circumstances surrounding the composition of the letter. Although the examiner was at first concerned that the defendant would not react to relevant questions as well as he should in order to make an interpretation of the graphic readouts, once the examination was administered it was apparent to the examiner that the defendant's reactions were significant enough to permit interpretation. Nevertheless, the examiner admitted that another examiner could reach a different conclusion as to the defendant's testability.

In imposing the second sentence, the sentencing judge admitted the earlier sentence was a mistake. His first impression had been that a 10- to 30-year sentence was appropriate, but because of the peculiar circumstances, the judge felt a lesser minimum sentence would be more appropriate. Now, the judge concluded, the indications of potential violence in the psychological tests are confirmed by the passage of two years since the initial sentencing. The judge considered the letter a contract to kill the defendant's ex-wife and found the defendant's explanation of the letter to be unsatisfactory. In addition, after granting the defendant's request to submit to a polygraph examination, the defendant failed that examination.

The trial judge explained, however, that the defendant was not being punished for writing the letter nor was the letter being used as a prior conviction. Instead, the court applied the letter as evidence that the wide spread between the minimum and maximum sentences originally imposed was inappropriate.

In this appeal, the issues raised by the defendant are two. Was it proper for the trial court to consider the defendant's letter since it was evidence which tended to prove the commission of another crime for which the defendant has not been convicted, and did the trial court err by admitting the result of the polygraph examination?

■■ ■ Regarding the admissibility of evidence which tends to establish the commission of another crime, this court has stated:

> "The law is clear that ordinary rules of evidence need not be followed during a sentencing hearing. (*People v. Adkins* (1968), 41 Ill. 2d 297, 242 N.E.2d 258.) Although a court in an aggravation and mitigation hearing is not bound by the ordinary rules of evidence applicable to criminal proceedings and may search anywhere within reasonable bounds for aggravating or mitigating factors, the evidence must be competent and material. *People v. Jackson* (1968), 95 Ill. App. 2d 193, 238 N.E.2d 196, and *People v. Kirk* (1978), 62 Ill. App. 3d 49, 378 N.E.2d 795.
> ✿ ✿ ✿

As noted in *People v. Kirk* (1978), 62 Ill. App. 3d 49, 378 N.E.2d 795, as a general rule bare arrests not resulting in convictions are not admissible at a sentencing hearing. However, the State may admit testimony concerning conduct which may be characterized as criminal and which is unrelated to the facts underlying defendant's conviction. Evidence of propensity to commit criminal offenses as shown by prior convictions is appropriate and relevant evidence in determining the sentence to be imposed. However, it is inappropriate to show such propensity by charge or allegations in the absence of a resulting conviction. To hold otherwise would mean a person would be treated as having been convicted of an offense and sentenced therefore without regard to the rights of due process accorded to those charged with criminal offenses. If evidence is appropriate and relevant for some purpose other than to show a propensity for criminal offenses, such evidence can be considered as relevant to the sentence even though it might be said to indicate a criminal offense." (*People v. Williamson* (1979), 69 Ill. App. 3d 1037, 1040-41, 388 N.E.2d 240, 243.)

In addition, the defendant's conduct in jail can be properly considered when imposing a sentence. (*People v. Maldonado* (1980), 80 Ill. App. 3d 1046, 400 N.E.2d 656.) Such conduct is relevant to a determination of rehabilitation potential. *People v. Loomis* (1971), 132 Ill. App. 2d 903, 271 N.E.2d 66.

In the case at bar, the evidence objected to is neither a charge nor allegation of criminal activity, but is an admission by the defendant, a letter which the defendant had written. Furthermore, this evidence is relevant for the purpose of negating certain mitigating factors which the sentencing judge had originally considered, such as the existence of remorse in the defendant for the attempt murder of his ex-wife and the marital problems of the defendant as causing the attempt murder. At the time the letter was written the defendant had not associated with his wife for some two years.

As for the admissibility of the result of the polygraph examination, absent a stipulation by the parties, such results are inadmissible. (*People v. Fletcher* (1976), 40 Ill. App. 3d 537, 352 N.E.2d 10; *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310.) While recognizing there should be no distinction for the admissibility of such test results at sentencing hearings as opposed to trials (see *People v. Ackerman* (1971), 132 Ill. App. 2d 251, 269 N.E.2d 737), a defendant ought not benefit by inducing a trial court to take action and then claiming such action was erroneous. See *Rotheimer v. Rotheimer* (1962), 34 Ill. App. 2d 1, 180 N.E.2d 356.

Even though a defendant stipulates to the admission of the results, where no evidence is introduced regarding the methods employed by the examiner or the qualifications of the examiner and where the expert was not available for cross-examination, the results are still not admissible. (*People v. Zazzetta* (1963), 27 Ill. 2d 302, 189 N.E.2d 260.) However, the examiner in the case at bar was available for cross-examination and did testify concerning the methods used and his qualifications.

Lastly, the defendant cites *People v. Monigan* (1979), 72 Ill. App. 3d 87, 390 N.E.2d 562, as being supportive of his position. We disagree. In *Monigan*, the defendant, after stipulating to the admissibility of the results, objected to their admission. It was there held that the trial court's admission of the results into evidence over the objection of the defendant was reversible error. Without approving, expressly or by implication, the result reached by the appellate court in *Monigan*, we find that case to be distinguishable from the case at bar.

In the present case, the defendant, at no time, brought this alleged error to the attention of the trial court. Not only did the defendant personally request to submit to the polygraph examination, but defense counsel made a motion to that effect, it was stipulated that the results would be admissible, no objection was ever made to such admission, and the record does not reflect that a post-trial motion was ever filed in which the alleged error was raised. Since the defendant induced the action of the trial court and since the trial court was not given an opportunity to rule on the objection now raised by the defendant, the issue has been waived for purposes of review.

For the foregoing reasons, the order of the Circuit Court of Tazewell County resentencing the defendant to a term of imprisonment of not less than 10 nor more than 30 years is affirmed.

Affirmed.

ALLOY, P. J., and SCOTT, J., concur.